UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA SROCK, as Personal
Representative of the Estate of
JAMES HOWARD SROCK,
Deceased,

      Plaintiff,

v.                                                        Case No. 04-CV-72788-DT

UNITED STATES OF AMERICA,

      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pending before the court is Defendant United States of America's June 23, 2006 motion for summary judgment. The matter has been fully briefed and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny Defendant's motion.

**I.  INTRODUCTION**

The parties have stipulated to all of the following facts relating to the events leading to this action:

> On February 11, 2000, a private aircraft crashed into the Cumberland National Historic Forest in Virginia, killing both occupants, Daniel Wood and James Srock. The flight originated in Dunnellon, Florida, destined for Pontiac, Michigan, when it crashed. During an enroute stop in Douglas, Georgia, the pilot telephoned the Automated Flight Service Station ("AFSS") in Macon, Georgia, for "some weather enroute." Plaintiff, Theresa Srock, claims the AFSS briefer negligently briefed the pilot, which caused or contributed to the crash, killing her husband who was not the pilot in command. The NTSB [National Transportation Safety Board] investigation revealed that the plane crashed in Virginia.

(3/21/06 Stipulation to Choice of Law at 1-2.)  The parties have also stipulated that Georgia law will determine the substantive law to be applied in this case since the alleged negligence occurred in Georgia.  (*Id.* 2-3.)  A Georgia court would apply the law of the state where the aircraft crashed, meaning that Virginia law will govern the substantive issues in this case.  (*Id.* at 1, 3.)

## II.  BACKGROUND

On July 23, 2004, Plaintiff Theresa Srock initiated this action as personal representative of the estate of her husband, James Howard Srock (the "decedent"), against the United States of America and several governmental agencies.  An Amended Complaint was filed on January 21, 2005, which included only the United States of America as a defendant.  Plaintiff seeks damages under the Federal Tort Claims Act, 28 U.S.C. § 2671, for the alleged negligence of Gloria Day, who was employed as a flight service station specialist at the AFSS in Macon, Georgia, at the time of the incident. Plaintiff alleges that Ms. Day provided an inaccurate and sub-standard weather briefing to pilot Dan Wood, and that Day's briefing was the proximate cause of the accident in which both Mr. Wood and Plaintiff's decedent were killed.

On February 11, 2000, Wood and the decedent left Dunnellon, Florida, headed for Pontiac, Michigan.  (Pl.'s Resp. at 2; Def.'s Mot. Br. at 1.)  Although both men had piloting experience, Wood, who was the owner of the plane, acted as the pilot.  (Pl.'s Resp. at 2; Def.'s Mot. Br. at 1.)  Prior to take-off, Wood contacted the Gainesville,

Florida AFSS, and received a standard weather briefing.[1] (Pl.'s Resp. at 2; Def.'s Mot. Br. at 2.) Due to the weather conditions, the Gainesville briefer told Wood that he could only get him as far as Tennessee for a VFR flight.[2] (Def.'s Ex. C at 5.) Specifically, the Gainesville briefer told Wood that he would have to take the trip in two legs: first to Tennessee and then, after waiting for a break in the two weather systems, the rest of the way to Michigan. (*Id.* at 5-7.)

Wood and the decedent thereafter proceeded toward Tennessee, stopping in Douglas, Georgia. (Def.s' Mot. Br. at 3; Pl.'s Resp. at 2-3.) Wood contacted the Macon AFSS briefer at 11:25 E.S.T., explained that he was "ready to depart at any time VFR to . . . Pontiac, Michigan," and requested "some weather en route." (Pl.'s Ex. 2 at 2-3.) During the four-minute conversation which followed, Day provided certain weather information to Wood and Wood asked various questions, which Defendant characterizes as "interruptions" to Day's briefing. (*See* Def.'s Br. at 3.) Defendant further claims that Wood "terminated the conversation before the briefer could complete her briefing." (Def.'s Br. at 5.) Specifically, the conversation concluded with the following exchange:

| | |
|---|---|
| Wood: | Uh well that's very helpful ma'm uh are there any pireps |
| Day: | No I don't have any pireps |
| Wood: | Oh key doke thank you very much |
| Day: | Okay thank you |

---

[1] Plaintiff does not claim any negligent acts or omissions from the AFSS pre-flight briefing in Gainesville, Florida.

[2] "VFR" refers to Visual Flight Rules, which "require a pilot to remain in visual conditions and clear of clouds." (Def.'s Mot. Br. at 2.)

3

  Wood:  Bye

  Day:  Bye

(Pl.'s Ex. 2 at 7.) The transcript of the conversation also indicates that after the conversation was terminated, Day stated "I'd hate to think that I had to fly with that man." (*Id.*)

In its motion for summary judgment, Defendant describes the events which occurred after the Macon briefing as follows:

> Three hours later the plane crashed. The weather between Knoxville and the crash site was generally clear, permitting VFR flight with scattered clouds until a few miles south of the Cumberland Gap National Park. Along the mountain ridge either side of the Cumberland Gap, there was a "deck of clouds" (Ex. E, Hoxit Dep. 53:17-18), an overcast layer from about 2,000 to 6,000 feet MSL (mean sea level), which would have been clearly visible to both pilots in the Seawind [Wood's airplane] for several minutes. (Ex. E, 52:17-59:2.) Flying low under the solid cloud layer, pilot Wood turned right, into clouds obscuring steep terrain. (Ex. F, Lamb Dep., 9:3-6) Following an abrupt increase in power and steep climb, the aircraft crashed to the ground in an out of control inverted fall. (Ex. F, 8:18-11:25; Ex. G, Coogan Report 2-3.)

(Def.'s Mot. Br. at 3-4.)[3] In her response brief, Plaintiff does not provide a specific, alternative account of the events leading up to the accident, but instead states that shortly after the Macon briefing, "the two men were killed when the negligent, incompetent and substandard briefing by Defendant briefer led them to crash into the Cumberland Gap." (Pl.'s Resp. Br. at 2.)

---

  [3]This version of events is based upon the eye-witness testimony of Greg Lamb and the expert opinions of Dr. Ray Hoxit, Defendant's weather expert and Mr. Bernard Coogan, Defendant's aviation accident reconstruction expert. Mr. Lamb testified that witnessed the airplane for about 15 to 20 seconds before it turned right and disappeared into the clouds. (Lamb Dep. at 9-12, Def.'s Ex. F.) Mr. Lamb then heard the engine revving "at full power," trees crashing, and then silence. (*Id.* at 10.)

As a result of the accident, Day was decertified from pilot briefing positions and received remedial training. (Day Dep. at 14-16, Pl.'s Ex. 4.)

### III.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from those facts in a manner most favorable to the nonmoving party. *Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). The court is not to weigh the evidence to determine the truth of the matter, but must determine if there is a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

Under the FTCA, the United States can be held liable "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, as the parties agreed, because the alleged act or omission occurred in Georgia, and because Georgia courts would apply Virginia law, Virginia law determines whether Plaintiff has produced sufficient facts to allow the trier of fact to find that Defendant's employee acted negligently in her briefing of the weather conditions on February 11, 2000.

Virginia law provides that "[t]he elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Service Corp.of Virginia v. Saxon Shoes, Inc.,* 624 S.E.2d 55, 62 (Va. 2006) (citing *Trimyer v. Norfolk Tallow Co.,* 66 S.E.2d 441, 443 (Va. 1951)). Defendant does not

6

appear to deny that it owed a duty to Plaintiff. Indeed, case law is well established that "[s]ince the FAA has undertaken to advise requesting pilots of weather conditions, thus engendering reliance on facilities . . . , it is under a duty to see that the information which it furnishes is accurate and complete." *Pierce v. United States,* 679 F.2d 617, 621 (6th Cir. 1982) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955); *Reminga v. United States*, 631 F.2d 449, 452 (6th Cir. 1980); *Gill v. United States*, 429 F.2d 1072, 1075-77 (5th Cir. 1970); *Ingham v. Eastern Air Lines, Inc.*, 373 F.2d 227, 238 (2d Cir. 1967)). Moreover, this duty is owed to passengers, such as the decedent, as well as pilots. *Id.* (citing *Freeman v. United States*, 509 F.2d 626, 629 (6th Cir. 1975)). As explained by the Fifth Circuit (and cited by Plaintiff):

> The United States may be liable under the Federal Tort Claims Act for negligent provision of services upon which the public has come to rely. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The government's duty to provide services with due care to airplane pilots may rest either upon the requirements of procedures manuals spelling out the functions of its air traffic controllers or upon general pilot reliance on the government for a given service, *Hartz v. United States*, 387 F.2d 870 (5th Cir. 1968). That duty, in appropriate circumstances, requires due care in providing both current weather information, *Ingham v. Eastern Air Lines*, 373 F.2d 227 (2d Cir. 1967), and weather forecasts, *Somlo v. United States*, 274 F.Supp. 827 (N.D. Ill.1967).

*Gill,* 429 F.2d at 1075. In light of this authority, there can be no argument that Defendant did not owe a duty to Plaintiff.

Instead, Defendant makes two arguments in support of its motion for summary judgment. First, Defendant argues that Day's briefing was not negligent and Plaintiff can therefore establish no breach of duty to pilot Wood. (Def.'s Mot. Br. at 5.) Second, Defendant argues that Plaintiff cannot establish that Day's briefing was the proximate

7

cause of the accident.[4] Because there are triable issues of fact relating to both of Defendant's arguments, the court must deny its motion.

### A. Negligence

Defendant first argues that the briefing provided by Day "met the standard of care of a reasonable briefer under the circumstances." (Def.'s Mot. Br. at 5.) Specifically, Defendant argues that Wood "interrupted the briefer several times, and terminated the conversation before the briefer could complete her briefing." (*Id.*) Defendant further claims that "[t]he briefer provided all available weather information requested by the pilot before Mr. Wood terminated the briefing." (*Id.*) Defendant thus argues that, "under the circumstances," Day met the standards of a reasonably prudent controller and complied with the requirements of the applicable Flight Service Stations ("FSS") manuals and regulations. (*Id.* at 8.)

Defendant cites *Peters v. United States*, 596 F. Supp. 889, 896 (E.D. Pa. 1984), in which the court, applying Virginia law, awarded judgment to the government where the VFR pilot was negligent for operating in instrument weather conditions and for not allowing the FSS briefer to finish his weather briefing. *Id. Peters*, however, is inapplicable to the motion before the court because the *Peters* court was not a resolution on summary judgment, but instead a final judgment on the merits. *See id.* at

---

[4]Defendant's brief divides the second argument into three sub-parts: (1) that Plaintiff cannot show by a preponderance of admissible evidence, that any act or omission of Day was the proximate cause of the crash; (2) that the alleged "extreme negligence" of the pilot was the sole proximate cause of the crash; and (3) that the alleged negligence of the pilot superseded any purported negligence of Day, and was therefore the immediate and proximate cause of the accident. Although Defendant separates these arguments, they all essentially relate to the same question of whether Plaintiff has established the existence of a fact question as to proximate causation.

8

889. The court was thus allowed to weigh the evidence and make findings of fact. This court, however, may not make such factual determinations on summary judgment, but must instead limit its inquiry to whether there is sufficient evidence to proceed to trial. *See Anderson*, 477 U.S. at 251-52.

In this case, the degree of care provided by Day is contested by the parties. While Defendant maintains that Day acted reasonably "under the circumstances," the court is not persuaded that the evidence is so one-sided so as to mandate this conclusion as a matter of law. Indeed, having reviewed the transcript of Day's briefing, the court is not persuaded that the *only* reasonable conclusion is that Day attempted to provide a standard briefing, but Wood prevented her from doing so. Nor can it be definitively determined that it was solely Wood who was responsible for terminating the briefing. Further, Plaintiff has produced the report of her expert, Richard P. Burgess, who concluded that Day's briefing failed to meet the standard of care of a reasonable air traffic specialist. (Burgess Report at 3-4, Pl.'s Ex. 3.) Specifically, Mr. Burgess noted Day's failure to provide, upon request, a cloud tops report or any PIREPs (pilot reports), her failure to provide adverse weather information, her failure to warn that VFR flight was not recommended and her indication to Wood that they were "pas[t] the storm." (*Id.* at 3-4.)[5]

Viewing the facts in a light most favorable to Plaintiff, the court cannot conclude as a matter of law that Day was not negligent in her briefing to Wood. If the trier of fact,

---

[5]Indeed, the transcript of the briefing reveals that Wood asked, "[O]kay we're pretty much passed [sic] the storm[,] aren't we[? W]e're coming out of [F]lorida," to which Day indicated in the affirmative, "uh huh." (Tr. at NTSB 037, Def.'s Ex. D.)

9

in this case the court, were to fully accept the expert opinion of Mr. Burgess, the court could find that Day did not provide "accurate and complete" information to Wood. *Pierce,* 679 F.2d at 621. For this reason, the court must reject Defendant's argument that summary judgment is appropriate because Plaintiff cannot establish the negligence of Day.

### B.  Proximate Causation

Defendant next makes several arguments relating to the whether Plaintiff can establish that Day's alleged negligence was the proximate cause of the accident. Under Virginia law, "[t]he proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Blue Ridge Service Corp.of Virginia v. Saxon Shoes, Inc.,* 624 S.E.2d 55, 62 (Va. 2006) (quoting *Beale v. Jones,* 71 S.E.2d 851, 853 (1970)). Further, "[t]he evidence tending to show causal connection must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the [trier of fact] has been made out." *Id.* In light of this requirement, "[i]t is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *Id.* (quoting *Weddle v. Draper,* 130 S.E.2d 462, 465 (Va. 1963)). Nonetheless, Virginia law also provides:

> In order for defendant's negligence to be a proximate cause of the injury, it is not necessary that defendant "shall have foreseen the precise injury that occurred," but, it "is sufficient if an ordinary, careful and prudent person ought, under the circumstances, to have foreseen that an injury might probably result from the negligence act."

10

*Sawyer v. United States*, 465 F. Supp. 282, 285 (D.C. Va. 1978) (quoting *Cox v. Mabe*, 204 S.E.2d 253 (Va.1974)).

In support of her proximate causation argument, Plaintiff relies on the report of her expert, Mr. Burgess, who is an instructor pilot and Aviation Consultant with 36 years of air traffic control experience as a controller, supervisor, facility manager and branch manager in the U.S. Navy and FAA. (Burgess Report at 1, Pl.'s Ex. 3.) Mr. Burgess reviewed the transcript of Day's briefing, as well as various weather reports and air traffic control manuals, and concluded that Day did not comply with pilot briefing procedures and failed to meet the standard of air of a reasonable air traffic specialist. (*Id.* at 3-4.) Mr. Burgess further stated that Day's "actions or inactions were the cause of the accident of N94WB." (*Id.* at 4.) Mr. Burgess concluded that in his opinion, "had Ms. Day provided the required weather briefing, the pilot of N94WB would have delayed or canceled his flight, and this accident would not have occurred." (*Id.* at 3.)

Plaintiff thus argues that, had Day fully complied with her duties to Wood and the decedent, Wood would "have been aware of the potential seriousness of the conditions into which he was taking himself and his passenger, and the accident could have been avoided." (Pl.'s Br. at 14.) Plaintiff points to the transcript from the Gainesville briefing, in which Wood stated that "if we hit some bad stuff we'll just put it on the ground," arguing that had Wood known about the weather conditions, he would not have taken off from Georgia.[6] (Tr. at NTSB 020, Def.'s Ex. D.)[7] The court finds that this version of

---

[6]While this statement is certainly susceptible of the interpretation advanced by Plaintiff, it is equally susceptible of the interpretation that Wood would perhaps have taken off from Georgia in any event, intending to risk the weather conditions and simply

11

events is supported by sufficient facts to create, at least, a triable issue of fact that Day's alleged negligence was the proximate cause of the accident. *See Beale v. Jones,* 171 S.E.2d 851, 853 (Va. 1970) ("The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred.").

In contrast, Defendant relies on its three expert witnesses to argue that its employee was not negligent in her briefing and that the crash was instead the result of pilot error and/or inexperience. First, Defendant points to the testimony of its pilot expert, Robert "Hoot" Gibson, a test pilot and former astronaut. (Gibson Dep., Def.'s Ex. C.) According to Mr. Gibson, Day did not make any mistakes in her briefing, but instead she merely responded to the questions that she was asked by Wood. (*Id.* at 48-49.) Mr. Gibson testified that Wood was "obviously looking for an update or an abbreviated weather briefing during the course of that Macon briefing." (*Id.* at 49.) Mr. Gibson concluded by stating that Wood did not follow the advice of the Gainesville briefer, because he did not fly to central Tennessee, and he therefore did not "see any reason to believe that they [Wood and the deceased] would have followed any other advice in the second briefing, if they had even received it." (*Id.* at 50.)

Defendant has also produced a weather expert, Dr. L. Ray Hoxit, who reviewed

---

land the airplane if he encountered any problems.

[7]Although Plaintiff did not cite to this testimony, the court notes that one of Defendant's experts stated that "Knoxville's got good weather. In the event that he had wanted to land there, he [went] close to Knoxville." (Hoxit Dep. at 53, Def.'s Ex. E.) This testimony could be used to support the theory that had Wood been properly briefed, he may have either declined to leave Georgia or, alternatively, continued only as far as Knoxville.

various types of "weather data" to analyze the weather conditions and how Wood reacted to those conditions. (Hoxit Dep., Def.'s Ex. E.) According to Mr. Hoxit, there were no "ferocious thunderstorms" or heavy precipitation in the vicinity of the accident. (*Id.* at 54.) Dr. Hoxit further testified for the majority of their flight through Tennessee, Wood and the decedent encountered good weather, or "VFR weather." (*Id.* at 53-55.) Dr. Hoxit stated: "And that VFR weather persists up to within a few miles of the Cumberland Gap Historical Park. And then based on the witness accounts, based on the satellite imagery, there's a significant change where we have a deck of stratus clouds." (*Id.* at 53.) Dr. Hoxit explained that "[u]p to that point, they could fly VFR. You have the deck of clouds ahead of them. They could see the clouds, no doubt." (*Id.*) At this point, Dr. Hoxit opined, the airplane descended to around 2,000 feet MSL or less in low overcast conditions and that this "transition zone occurs a few miles south of Cumberland Gap, several miles south of the accident area. And . . . that's where they could see the weather was going downhill. They could see it for several minutes." (*Id.* at 53.) Dr. Hoxit testified that "for whatever reason, which I think the accident reconstructionists and pilots should address, he's observed to descend and be flying under the clouds in IFR conditions." (*Id.* at 54.)

      Finally, Defendant has submitted a report prepared by Bernard J. Coogan, Defendant's aviation accident reconstruction expert. (Coogan Report, Def.'s Ex. G.) After reviewing various records and photographs, interviewing witnesses, and examining additional data, Mr. Coogan concluded that "[t]he cause of the accident was the continued flight into lowering weather conditions combined with a descent to a dangerously low altitude in precipitous terrain. This resulted in the loss of all visual

clues and subsequent loss of control of the aircraft which caused the fatal decent [sic] into the Virginia mountain side." (*Id.* at 2.) Mr. Coogan primarily cited pilot error as the cause of the accident, but also concluded that contributing factors were "the unusual flight characteristics of this high-performance, amateur built, experimental aircraft, and the limited flight experience of both pilots." (*Id.* at 3.) Further, Mr. Coogan could not eliminate possible aircraft modifications or defects as a cause or contribution to the accident, inasmuch as the wreckage was disposed of prior to this litigation. (*Id.*)

Relying on its experts, Defendant argues that "Plaintiff cannot show that the pilot <u>reasonably</u> relied on such information, or that such reliance was the proximate cause of the crash at issue." (Def.'s Mot. Br. at 11 (emphasis in original).) Defendant cites *Zoppi v. United States,* 396 F. Supp. 416, 422 (D. Ohio 1975), in which the court found that the plaintiff had not proven that the government was responsible for the crash. Again, however, Defendant has cited a case which reflected a ruling after a bench trial, rather than a summary judgment determination. The *Zoppi* court held that "[t]he cause of that crash remains unknown, but, *within the facts developed at trial*, it cannot be attributed to any actions of the air traffic controller." *Id.* at 422-23 (emphasis added). This court, however, is not yet entitled to weigh the reports of Defendant's experts against the report of Plaintiff's expert. At this point, Plaintiff need only show, as she indeed has, that there is sufficient disagreement to submit the issue to the fact-finder. *Sagan*, 342 F.3d 497.

Moreover, the court is not persuaded that the purported negligence of Wood *necessarily* precludes a finding that Day's alleged negligence was the proximate case of the accident. First, as Plaintiff correctly points out, a pilot's negligence cannot be

14

imputed to the passengers. *Pierce*, 679 F.2d at 622; *Stork v. United States,* 278 F.Supp. 869, 881 (D.C.Cal. 1967). Second, as the Sixth Circuit has held:

> It is clear that there can be more than one proximate cause of an airplane crash. The "actual" or immediate cause of a crash may not be provable, especially where all the occupants perish in the accident. In the present case the district court found that the critical parts of the plane which might have shown the actual cause were unavailable. The mere fact that the plaintiffs were unable to show which of two projected causes was the actual cause of the crash did not mean that they had failed in their burden of proof. If they established a breach of duty by the government which was either the sole proximate cause or a concurrent proximate cause they made out a prima facie case. A decision founded on circumstantial evidence which presents two opposing theories, particularly where expert testimony has been received, is not based on improper speculation.

*Pierce*, 679 F.2d at 622; *see also Coleman v. Blankenship Oil Corp.,* 267 S.E.2d 143, 147 (Va. 1980) ("There may, of course, be more than one proximate cause of an event."). Thus, the fact that Wood's negligence may have been a proximate cause of the crash does not preclude a finding that Day's negligence was also a proximate cause of the crash.

Finally, the court is not persuaded by Defendant's argument that there is no triable issue that, even if Day was negligent, Wood's negligence was a superceding cause of the accident. Whether a second tort is superseding, rather than concurrent, depends on analysis of a number of factors. Some of the considerations include:

> (1) whether the harm caused was different in kind from that which would have followed from defendant's negligence; (2) whether the operation or the consequences of the intervening cause appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation; (3) whether the intervening force acts independently of the situation or is a normal part of the situation; and (4) whether the intervening cause is a third party's action or omission.

*Coles v. Jenkins,* 34 F.Supp.2d 381, 387 (W.D.Va. 1998) (citations omitted). Defendant

15

relies on *Budden v. United States*, 15 F.3d 1444 (8th Cir. 1994), in which the Eighth Circuit upheld the district court's determination that the pilot's negligence was the "sole proximate cause of the accident," which broke any causal connection between the negligent briefing and the crash. *Id.* at 1450. While this case could certainly be persuasive at trial, it is nonetheless yet another case which is not applicable to a summary judgment determination. As with *Peters* and *Zoppi*, discussed above, *Budden* involved a review, not of a Rule 56 determination, but of a bench trial. *Id.* at 1448. In order to sustain a Rule 56 motion, however, Defendant must show as a matter of law that Wood's negligence "so entirely supersede[d]" Day's alleged negligence "that it alone, without [Day's negligence contributing] thereto in the slightest degree, produce[d] the injury." *Coleman*, 267 S.E.2d at 147 (citing *Richmond v. Gay*, 49 S.E. 482, 483 (Va. 1905). Because of the inherently fact-intensive nature of this inquiry, "courts in Virginia have consistently held that whether an intervening act was so extraordinary as to supersede any prior act of negligence as the proximate cause is usually a question for the jury." *Coles,* 34 F.Supp.2d at 386. The differing opinions of the experts, however, presents a trial issue on this question. Indeed, "an intervening cause is not a superseding cause if it was 'put into operation by the defendant's wrongful act of omission.'" *Coleman*, 267 S.E.2d at 147 (citing *Jefferson Hospital, Inc. v. Van Lear*, 41 S.E.2d 441, 444 (Va. 1947); *see also Coles,* 34 F. Supp. 2d at 387. Based on the evidence thus far presented, a reasonable conclusion--albeit not the only conclusion--is that Wood's negligence, if any, was a reasonably foreseeable consequence which was put in motion by Day's negligence.

For all these reasons, the court finds that Plaintiff has succeeded in meeting her

burden under Federal Rule of Civil Procedure 56 of showing the presence a genuine issue of material fact. Plaintiff contends that Day's negligence was the proximate cause of the crash and Defendant contends that Wood's negligence was the proximate cause. Both parties have presented sufficient evidence to support their respective theories. As such, this case must proceed to trial. *Scott v. Simms,* 51 S.E.2d 250, 253 (Va. 1949) ("The question of proximate cause, or whether there is causal connection between negligence and accident, is a question of fact. Its existence or non-existence becomes a question of law only when the evidence is such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from it."). Defendant's motion will therefore be denied.

### IV.  CONCLUSION

For the reasons discussed above, IT IS ORDERED that Defendant's motion for summary judgment [Dkt. # 40] is DENIED.

       S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  August 23, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 23, 2006, by electronic and/or ordinary mail.

       S/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522